**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MICKEY MASON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22-cv-3774 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| DAVID MARTIN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

Mickey Mason, a pro se inmate, sued 19 prison officials, bringing a variety of claims under 42 U.S.C. § 1983. For the most part, he alleges that several Defendants interfered with his mail. He brings retaliation and conspiracy claims, too.

Mason made a lot of claims against a lot of people. But when the time came for summary judgment, Mason had little to offer. He did not file a response brief, and did not respond to Defendants' statement of facts.

At best, Mason submitted a pile of a few dozen exhibits, and asked this Court to sift through the morass. But an evidence pile does not move the needle.

Based on the record, there is no genuine issue of material fact, and the Court grants the Defendants' motion for summary judgment in its entirety.

### Non-Compliance with the Local Rules

Before diving in, this Court must call attention to Mason's failure to comply with the Local Rules. The punchline is that Defendants complied with the Local Rules, and Mason did not.

Local Rule 56.1 establishes the procedure for filing and opposing a motion for summary judgment. The moving party must provide a "statement of material facts that complies with [Local Rule] 56.1(d) and that attaches the cited evidentiary material." *See* L.R. 56.1(a)(2).

The statement of facts must rest on evidence in the record, with user-friendly citations. "Each asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it." *See* L.R. 56.1(d)(2).

The non-movant must respond to a motion for summary judgment by filing (1) a memorandum of law; and (2) a response to the movant's statement of facts. *See* L.R. 56.1(b)(2).

The response to the movant's statement of facts must "consist of numbered paragraphs corresponding to the numbered paragraphs" in the movant's statement of facts. *See* L.R. 56.1(e)(1).

A non-movant cannot simply dispute a fact, without more. Disputing a fact requires citations to specific evidence in the record. "To dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." *See* L.R. 56.1(e)(3).

Basically, the Local Rules require the non-movant to respond, paragraph by paragraph, to the facts in the movant's statement of facts. And if the non-movant disagrees with any of the movant's facts, the non-movant must cite evidence in the record to back up his position.

An incomplete response to a statement of facts has straightforward consequences. "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." *See* L.R. 56.1(e)(3).

The Local Rules also allow the non-moving party to add facts to the record by filing a statement of additional material facts. *See* L.R. 56.1(b)(3). The process for a statement of additional facts is basically the same as the process for a statement of facts.

Navigating the rules can be a challenge for pro se litigants. So the Local Rules require movants to give pro se litigants some extra tender loving care. Movants must provide a copy of Federal Rule 56 and Local Rule 56.1. What's more, movants must serve a "Notice to Unrepresented Litigants Opposing Summary Judgment," which explains the summary judgment procedure in plain English. *See* L.R. 56.2. That way, pro se parties have actual and constructive notice of their responsibilities under the Local Rules.

The Local Rule 56.2 Notice explains that disputing a fact requires the non-movant to "cite the specific page(s) of evidence that supports your position." *See* L.R. 56.2. The Notice includes forewarnings about the lack of compliance, too. "You must respond to each of the defendant's facts, paragraph by paragraph. **If you do not respond to a fact asserted by the defendant, the judge may decide that you have admitted that the fact is true**." *Id.* (bold in original).

Defendants complied with the Local Rules by filing a statement of facts in support of its motion for summary judgment. *See* Def.'s Statement of Material Facts (Dckt. No. 229). Mason is pro se, and Defendants served Mason with the Notice under Local Rule 56.2. *See* Def.'s Local Rule 56.2 Notice (Dckt. No. 231). So far, so good.

Mason did file a response, of sorts. *See* Resp. (Dckt. No. 238). But the response did not comply with the Local Rules.

Mason did not file a response to Defendants' statement of facts. That is, he did not file a document that responded, paragraph by paragraph, to the facts stated in Defendants' Local Rule

56.1 statement. The failure to respond means that all of Defendants' facts are deemed admitted. *See* L.R. 56.1(e)(3).

Mason did not file a response brief, either. If he had a story to tell at the summary judgment stage, Mason didn't tell it – despite abundant opportunities.

Instead, Mason filed a collection of 26 exhibits (Exhibits A – Z), spanning 147 pages. *See* Resp. (Dckt. No. 238). Dumping documents on the Court isn't what the Local Rules have in mind.

A non-movant cannot respond to a motion for summary judgment by simply filing exhibits that support his or her case. The Local Rules require a brief and a response to a statement of facts, *plus* any supporting evidence. Submitting the exhibits themselves isn't enough.

The Court doesn't have the time, the energy, or the inclination to sort through this document dump and hunt for factual disputes. That's why Local Rule 56.1 exists. *See Gross v. Town of Cicero*, 619 F.3d 697, 702–03 (7th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in the record.") (cleaned up).

This Court has granted Mason many extensions throughout this lawsuit. Along the way, this Court repeatedly forewarned Mason that a failure to comply with Local Rule 56.1 would result in the Defendants' facts being treated as undisputed.

In fact, this Court issued at least five orders that highlighted the importance of complying with the Local Rules. This Court called attention to the consequences of non-compliance, too. *See* 2/28/25 Order (Dckt. No. 207) ("The Court reminds all parties of the obligation to comply with the Federal Rules and the Local Rules, especially Local Rule 56.1. A failure to comply can lead to appropriate relief, including deeming facts as admitted."); 7/17/25 Order (Dckt. No. 222) ("The Court directs counsel to comply with the Local Rules, especially Local Rule 56.1, in their summary judgment filings. The Court once again reminds defense counsel to serve Plaintiff with the notice for pro se litigants as required by Local Rule 56.2."); 8/18/25 Order (Dckt. No. 232) ("The Court reminds Plaintiff to comply with Local Rule 56.1 in his response to the motions for summary judgment. A failure to comply can lead to appropriate relief, including deeming certain facts as admitted."); 9/9/25 Order (Dckt. No. 234) ("The Court reminds Plaintiff to comply with Local Rule 56.1. A failure to comply can lead to appropriate relief, including deeming certain facts admitted."); 10/8/25 Order (Dckt. No. 237) ("The Court reminds Plaintiff of the obligation to comply with Local Rule 56.1. A failure to comply can lead to appropriate relief, including deeming certain facts as undisputed.").

The upshot is simple. Defendants filed a statement of material facts, and supported their facts with admissible evidence. Mason failed to respond as required by the Local Rules. So all of Defendants' facts are deemed admitted.

**Facts and Procedural History**

Mason filed this case about his time at the Sheridan Correctional Center, where he was incarcerated from October 6, 2021 through October 31, 2022. *See* Defs.' Statement of Facts, at ¶¶ 1–2 (Dckt. No. 229).

Mason filed a lengthy handwritten complaint, with dozens of pages of exhibits. *See* Am. Cplt. (Dckt. No. 27). He basically alleges that he had problems with the mail.

This Court prescreened the complaint as required by statute. *See* 28 U.S.C. § 1915A. In the end, this Court trimmed some claims from the case, such as allegations about his disciplinary tickets and the grievance procedure. But the Court allowed four claims to proceed.

First, Mason brings a First Amendment mail interference claim, meaning a claim that Defendants delayed, destroyed, or obstructed the delivery of his mail. Second, Mason brings a First Amendment retaliation claim, alleging that he was punished for filing grievances and for bringing complaints to Warden Terry. Third, Mason brings a civil conspiracy claim against all Defendants in their individual capacities. Fourth, Mason brings an official capacity claim against Warden Miles.

The parties embarked on discovery. It was a long, bumpy ride. The parties fought long and fought hard. The docket sheet contains hundreds of entries. Mason filed at least eight motions to compel.

When it was all said and done, Defendants filed a statement of facts, and Mason did not respond as required by the Local Rules. So the Court draws the following facts from Defendants' statement of facts.

Defendants' statement of facts explains how the Sheridan Correctional Center handles mail, including legal mail. *See* Defs.' Statement of Facts, at ¶¶ 32, 35–46 (Dckt. No. 229). For example, under Sheridan's procedures, all clearly marked legal and privileged mail must be logged in a system known by the cheery-sounding abbreviation CHAMPS. *Id*. at ¶ 39.

Defendants' statement of facts summarizes the role played by each of the Defendants. The summary includes what role they played with the mail (if any), and what interactions each of them had with Mason (if any).

The statement of facts is long, but the length is understandable. After all, Mason sued 19 different people, and Defendants' statement of facts covers each of them individually.

The statement of facts has a War-and-Peace quality to it. There are so many characters, and the story is so long, that it's hard not to lose the thread.

But in the interest of completeness, this Court will cover the highlights. One important point is worth saying up front, by way of a roadmap.

The case is primarily about interference with the mail. Mason brings that claim against six Defendants: Martin (Defendant #1), Taylor (Defendant #13), Schmidt (Defendant #15), Stahl (Defendant #14), Pienta (Defendant #19), and Scarbrough (Defendant #16). *Id.* at ¶ 30.

Mason is not bringing a mail interference claim against the remaining 13 Defendants: Hochstatter (Defendant #10), Ziano (Defendant #11), Morrissey (Defendant #3), Bateman (Defendant #8), Knauer (Defendant #6), Kuforiji (Defendant #5), Abbittista (Defendant #7), Terry (Defendant #12), Miles (Defendant #2), Jeffreys (Defendant #18), Nolan (Defendant #17), Carlock (Defendant #9), and Latigo (Defendant #4). *Id.* at ¶ 29.

So, in the interest of telling the story (or what this Court can make of it), this Court will summarize the facts about the mail interference claim, including those six Defendants (Martin, Taylor, Schmidt, Stahl, Pienta, and Scarbrough). And then, the Court will turn to the remaining Defendants.

## I.      The Defendants for the Mail Interference Claim

Mason frequently received mail at Sheridan. *See* Defs.' Statement of Facts, at ¶ 28 (Dckt. No. 229). Sheridan's procedures required that all clearly marked legal and privileged mail be logged in a system known by the abbreviation CHAMPS. *Id*. at ¶ 39.

On May 19, 2022, the mailroom mailed two outgoing items sent by Mason. One letter was addressed to the Cook County Chancery Court, and the other was addressed to attorney Philip Santell. *Id*. at ¶ 103.

In his amended complaint, Mason alleged that Defendants interfered with mail related to his postconviction petition in state court. *See* Am. Cplt., at 9–10 (Dckt. No. 27). He also claimed that Defendants opened mail sent to him by the law firm King and Spalding. *Id.* at ¶¶ 35, 52–53.

If the summary seems a bit jumbled and herky-jerky, you're not wrong. Suffice it to say that the statement of facts gives bits and pieces about those Defendants, and mostly covers what they did not do.

David Martin (Defendant #1) was the Mailroom Supervisor at Sheridan. *See* Defs.' Statement of Facts, at ¶ 31 (Dckt. No. 229). Martin recalls that Mason had a lot of outgoing legal mail. He recalls providing responses to a grievance officer or counselor about Mason's mail complaints. *Id*. at ¶¶ 33, 47.

Steven Taylor (Defendant #13) was a Property Officer assigned to Personal Property. *Id*. at ¶¶ 81–85. He assisted inmates with packaging large mailings and transporting them to the mailroom. He did not review documents. He recalls interactions with Mason, but does not recall specific dates. *Id*.

Wesley Schmidt (Defendant #15) was assigned to Internal Affairs. *Id*. at ¶¶ 86–94. He assisted with PREA reviews (meaning the Prison Rape Elimination Act). He occasionally opened legal mail in the presence of an inmate with required signatures. He does not recall handling Mason's legal mail, and never asked Mason to be a confidential informant. *Id*.

Jason Stahl (Defendant #14) served as a correctional officer in the Intelligence Unit with duties that included reviewing mail provided to Intelligence. *Id*. at ¶¶ 60–64. He does not recall reviewing Mason's mail. He never wrote Mason a ticket, and did not initiate any investigation of Mason. *Id*.

Joseph Pienta (Defendant #19) was also a correctional officer in the Intelligence Unit. *Id*. at ¶¶ 66–73. He recalls only conducting Mason's intake interview. He lacked authority to label an inmate as gang-affiliated, and does not recall reviewing Mason's mail. *Id*.

Matthew Scarbrough (Defendant #16) was the Intelligence Coordinator. *Id*. at ¶¶ 75–76. He oversaw Intelligence and reviewed mail routed from the mailroom. *Id*. Scarbrough confirmed that Mason was never on a mail watch list, and that only mail deemed suspicious by the mailroom would have been sent to Intelligence. *Id*. at ¶¶ 77–80.

On October 23, 2022, Scarbrough wrote Mason a disciplinary ticket for organizing a protest. Other than that, Scarbrough had no interaction with Mason. He does not recall reviewing Mason's mail. *Id*.

David Nolan (Defendant #17) was the Head of the Internal Affairs Unit at Sheridan. *Id*. at ¶ 48. Nolan's unit reviewed PREA hotline calls. *Id*. at ¶¶ 49–50. A warden or designee would sign off on any investigation, and non-PREA calls were not investigated beyond an initial review. *Id*.

Nolan does not recall a PREA investigation about Mason, and records reflect that Mason made two PREA hotline calls. *Id*. at ¶¶ 51–52. Nolan had no supervisory authority over the Intelligence Unit.

Nolan could not initiate staff investigations except when ordered by the Warden or Deputy Commander, and could not initiate investigations on inmates. No one initiated an investigation of Mason during the period at issue. Nolan never asked Mason to serve as a confidential informant. *Id*. at ¶¶ 53–58.

The most important take-away is the lack of evidence. Martin, Taylor, Schmidt, Stahl, Pienta, and Scarbrough presented evidence that they never purposely or intentionally interfered with, destroyed, or delayed Mason's mail. *Id*. at ¶¶ 98–99. They never conspired with other staff to retaliate against or harm Mason, either. *Id*.

That's their side of the story. And it's the only story in the record.

## II.    The Remaining Defendants

There are 13 other Defendants.  One wonders why many of them are here.  But they won't be here for long.

Sherwin Miles (Defendant #2) was the Warden.  *Id.* at ¶ 16.

Ryan Morrissey (Defendant #3) is barely mentioned in the statement of facts.  Mason never spoke with him.  *Id.* at ¶ 11.

Crystal Latigo (Defendant #4) got sued "for the discipline Plaintiff received from an Adjustment Committee hearing for a disciplinary violation."  *Id.* at ¶ 26.

Kuforiji Adewale (Defendant #5) is not mentioned in Defendants' statement of facts, except in the very first paragraph.

Debbie Knauer (Defendant #6) denied Mason's grievances.  *Id.* at ¶ 13.

Anthony Abbattista (Defendant #7) is not mentioned in Defendants' statement of facts, except in the very first paragraph.

Todd Bateman (Defendant #8) is a Defendant, but Mason does not know who he is, or why he is a Defendant.  *Id.* at ¶ 12.  Neither does this Court.

Craig Carlock (Defendant #9) got sued "for the discipline Plaintiff received from an Adjustment Committee hearing for a disciplinary violation."  *Id.* at ¶ 24.

Brandon Hockstatter (Defendant #10) is not mentioned in Defendants' statement of facts, except in the very first paragraph.

Stacey Ziano (Defendant #11) is a Defendant, but Mason does not know who he (or she) is, or why he (or she) is a Defendant.  *Id.* at ¶ 10.  This Court is in the dark, too.

Donald Terry (Defendant #12) was the Assistant Warden of Operations.  *Id.* at ¶ 15.

Rob Jeffreys (Defendant #18) was the Acting Director of IDOC.  *Id.* at ¶ 107.

Mason admits that he has never heard or seen these Defendants conspiring against him.  *Id.* at ¶ 100.  Mason believes that all IDOC employees are retaliating against him.  *Id.* at ¶ 101.

The "only reason" Mason is suing eight Defendants (Hochstatter, Morrissey, Knauer, Kuforiji, Abbittista, Terry, Miles, and Jeffreys) is for failure to investigate his grievances.  *Id.* at ¶ 102.

Needless to say, it is unfortunate that so many individuals – including Morrissey, Adewale, Abbattista, Bateman, Hockstatter, and Ziano, among possible others – were sued for no

apparent reason.   If there is a basis for their inclusion in this lawsuit, Mason never revealed what it is.

## Legal Standard

A district court "shall grant" summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive summary judgment, the opposing party must go beyond the pleadings and identify specific facts showing the existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at 256.

The Court construes all facts in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences.  *See Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016).  The Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of triable fact exists.  *See Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

Summary judgment is appropriate if, on the evidence provided, no reasonable jury could return a verdict in favor of the non-movant.  *See Celotex Corp.*, 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

## Analysis

This Court construes the motion at hand as a *Celotex*-type motion for summary judgment. Basically, the motion pointed out the complete lack of evidence, and put the onus on Mason to come forward with a factual basis for a trial.

Summary judgment is the time for the non-moving party to put its evidentiary cards on the table.  Summary judgment is "not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events."  *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005).

"A party seeking to defeat a motion for summary judgment is required to 'wheel out all its artillery to defeat it.'"  *Caisse Nationale de Credit v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

Here, Mason fired blanks.  He didn't respond to the statement of facts, and didn't file a response brief.  There is nothing on the table from Mason's side of the field of battle.

## I.      The Mail Interference Claim

The first claim is a mail interference claim.  Suffice it to say that there is no evidence that anyone interfered with Mason's mail, let alone did so in a manner that raises constitutional problems.

Inmates have a First Amendment right to send and receive mail.  *See Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999).  But that right does not prevent prison officials from examining mail to ensure that it does not contain contraband.  *See Wolff v. McDonnell*, 418 U.S. 539, 576 (1974).

"Prison regulations or practices that affect a prisoner's legal mail are of particular concern because of the potential for interference with a prisoner's right of access to the Courts."  *Rowe*, 196 F.3d at 782 (citing *Lewis v. Casey*, 518 U.S. 343 (1996)).  "To establish a deprivation of access to the courts, a prisoner must show that unjustified acts or conditions hindered his efforts to pursue a legal claim."  *Nance v. Vieregge*, 147 F.3d 589, 591 (7th Cir. 1998).

Based on the record, there is no evidence in the record that anyone prevented Mason from sending mail, or receiving mail.

In his complaint, Mason identified three pieces of mail that Defendants allegedly opened unlawfully.  *See* Defs.' Statement of Facts ¶ 30 (Dckt. No. 229).  That's an allegation, not evidence.  And at summary judgment, evidence is all that matters.

Mason failed to come forward with any evidence that any of the Defendants opened his mail, let alone did so in an unlawful manner.  Plus, nothing in the record suggests that any of the mail contained the kind of information that would give prison officials "an edge in litigation."  *See Guajardo-Palma v. Martinson*, 622 F.3d 801, 806 (7th Cir. 2010).  There is no evidence that he had diminished access to the courts.

Mason alleged in his complaint that Schmidt, Stahl, Pienta, and Scarbrough opened a letter sent to him from King & Spalding.  But again, a complaint is not evidence.  It is an allegation, not proof.

Summary judgment is the time for proof, not allegations.  And there is nothing in the record indicating that any of the four Defendants opened the letter.  The record includes no facts about the contents of that letter.  There is no evidentiary basis to believe that reading its contents would have given the IDOC an edge in litigation.

In his complaint, Mason also claimed that the prison delayed sending a mailing to the Cook County Chancery Court.  He alleged that he gave officials a letter to send to one of his lawyers on the same day, May 18, 2022.  He alleged that the letter to the lawyer was sent on May 19, but that the filing destined for the Chancery Court was intentionally withheld by Defendant Martin for five days.

Defendants presented countervailing evidence. Prison records show that the prison sent the Chancery Court filing on May 19. *See* Defs.' Statement of Facts, at ¶ 103 (Dckt. No. 229).

Mason came forward with no evidence to support his allegation. He had opportunity after opportunity, chance after chance, and extension after extension. If evidence is somewhere in the pile of exhibits, it would not help Mason, because the Local Rules do not allow a document dump.

In any event, any delay made no difference. Mason has not shown that a five-day delay (even if it occurred) hindered his ability to pursue his case in Chancery Court.

Overall, the record completely lacks any supporting evidence that anyone interfered with Mason's rights when it came to the mail. The Court grants summary judgment to Defendants on the mail interference claim.

## II.     The Retaliation and Conspiracy Claims

The record is equally barren when it comes to the retaliation and conspiracy claims, if not more so.

The record completely lacks any evidence of retaliation. In fact, it is hard to know how, exactly, any of the Defendants allegedly retaliated against Mason.

Defendants did not retaliate against Mason by unlawfully opening his mail, because there is no evidence that they unlawfully opened his mail. There is no other evidence of any other alleged retaliation.

The same goes for the conspiracy claim. There is no evidence that Defendants conspired against Mason. And Defendants presented evidence that they did not.[1] *Id.* at ¶¶ 99–100.

Based on the complete lack of supporting evidence, the Court grants summary judgment to all Defendants on the retaliation and conspiracy claims.

## IV.     The Claim against the Warden

Mason also filed an official capacity claim against Warden Miles. It is hard to know what the claim is.

---

[1] As an aside, Defendants argued that the conspiracy claim fails because there is no evidence that Defendants conspired with a private actor. *See* Def.'s Brf., at 12 (Dckt. No. 230). That's incorrect. A conspiracy claim under section 1983 *can* include private actors, if they conspire with a state actor. (The idea is that a conspiracy between a state actor and a private actor can constitute state action.) But a conspiracy doesn't *have to* involve a private actor to violate section 1983. A conspiracy among state actors, and only state actors, can give rise to a claim. After all, section 1983 is all about state action, so the presence of private actors is not required.

In any event, the claim is moot. Miles is no longer the Warden. And Mason cannot get prospective injunctive relief because he is no longer housed at Sheridan.

## Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is hereby granted.

Date: March 3, 2026

Steven C. Seeger
United States District Judge

11